IN RE GUARDIANSHIP OF ALICE D. ET AL., CHILDREN UNDER 18
YEARS OF AGE.
LARRY G. BLACK, APPELLEE, V. NEBRASKA DEPARTMENT OF
SOCIAL SERVICES, APPELLANT, AND TAMMY D., APPELLEE.

548 N.W.2d 18

Filed May 28, 1996.   Nos. A-95-1139 through A-95-1142.

Don Stenberg, Attorney General, Royce N. Harper, and Lisa Swinton, Special Assistant Attorney General, for appellant.

Margaret A. McDevitt, of Legal Services of Southeast Nebraska, for appellee Tammy D.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

This opinion concerns appeals from four separate proceedings in the county court in which Larry G. Black sought to be appointed the guardian of four of his grandchildren, all of whom are under 14 years of age. The questions raised in each of these cases are identical, and therefore the cases have been combined for argument and opinion. The county court dismissed the petitions with prejudice for the stated reasons that no notice of the applications was given to the children's fathers and that the evidence was insufficient to warrant the appointment of a guardian. The record shows that these children are currently subject to proceedings in a juvenile court and that

their care has been awarded by that court to the Nebraska Department of Social Services (DSS). We conclude that the juvenile court has exclusive jurisdiction over these minor children, and therefore the county court was without jurisdiction to appoint a guardian. We dismiss the appeals for lack of jurisdiction and in so doing hold the county court's order dismissing the petitions with prejudice is ineffective.

## FACTUAL BACKGROUND

In separate petitions, Black alleged that he had had "the principal care and custody of [the minor children] during the preceding sixty days and the Nebraska Department of Social Services has had the legal custody of the minor child[ren]." He also alleged that the children live with him in Lancaster County; that the natural mother cannot provide for the care of the minor children; that the fathers of the minor children are not listed on any of the children's birth certificates; and that for all but one child, the children's fathers have not claimed paternity. Black nominated himself as guardian and requested that the court so appoint him. A "Waiver of Notice and Nomination of Guardian" signed by a DSS case manager is attached to each petition. Each transcript also contains a "Waiver of Notice" signed by the natural mother, stating that she has no objection to Black being appointed guardian and waiving all required notices.

A combined hearing was held on all four petitions on September 19, 1995. The bill of exceptions is 10 pages in length. The record shows that all four children were present as well as Black, his counsel, counsel for the natural mother, and Billie Jo Dieckhaus, the DSS case manager handling the children's cases. Only Black and Dieckhaus were called as witnesses. The evidence is sketchy at best.

Black testified that he has had custody of two of the children for 3 years, of one for 2 years, and of one since "last year"; that the children have done well with him; that he can provide a good home for them; that he is working with DSS; and that with DSS approval, he has "facilitated visitation" with the children's natural mother.

Dieckhaus then testified that she has been the DSS case manager for the children for at least the past 3 years. She opined that Black has provided excellent care for the children and that it is in the best interests of the children that they remain with Black because of the stability, love, and permanency Black provides to them.

The judge then asked several questions. These questions indicated that the judge was concerned about the lack of notice to the children's parents and that guardianship proceedings were being instigated by DSS while proceedings concerning these children were pending in a juvenile court. Dieckhaus advised the court that there was an open juvenile case regarding the children.

Dieckhaus explained that Black, as the guardian, would continue to receive money from DSS. The trial judge questioned the need for a guardian for the children. Counsel for Black stated to the court that the proceedings mean the children could be "relieved of the juvenile court jurisdiction." The dialog between the judge and counsel is not completely clear, but it establishes that DSS intended to use the appointment of Black as guardian as a step in terminating the jurisdiction of the juvenile court over the children. The judge indicated displeasure at this approach, but took the matter under advisement.

The court made the following findings in the journal dismissing the petitions with prejudice: that no reason for abandonment by the mother was provided to the court, that there appear to be two or three biological fathers of the children and no notice was provided to any of them, that there is no evidence regarding the rights of the natural parents, that Black is not the driving force behind these petitions, that there was no showing of a necessity for " 'permanency in placement,' " and that "[t]he evidence adduced herein is wholly insufficient to warrant any appointment along those grounds." DSS and the children's mother contest this order.

## ASSIGNMENTS OF ERROR AND PARTIES

DSS filed the appeal and the children's mother filed a brief as an appellee, but both allege that the county court abused its

discretion by denying the petitions for guardianship and by dismissing the petitions with prejudice.

An appellate court has both the power and the duty to determine whether it has jurisdiction of a case before it. *WBE Co. v. Papio-Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995). This issue is presented because DSS was not a named party below, but it appealed to this court. Neb. Rev. Stat. § 30-1601(2) (Reissue 1995) provides: "An appeal may be taken by any party and may also be taken by any person against whom the final judgment or final order may be made or who may be affected thereby." The record contains no documentation of the juvenile proceedings. However, the testimony shows that DSS was awarded the care of the minors by a juvenile court, and Neb. Rev. Stat. § 43-285 (Reissue 1993) provides in substance that when a juvenile court awards the care of a juvenile to DSS, that juvenile becomes the ward of DSS and subject to its guardianship, and DSS has standing as a party. We therefore conclude that DSS may be affected by the judgment of dismissal, and therefore it may appeal that order.

## DISCUSSION

There is an additional jurisdictional issue that must be considered, that is, the jurisdiction of the county court over the appointment of a guardian of minors when those minors are already subject to juvenile proceedings under Neb. Rev. Stat. § 43-247(3) (Reissue 1993). Subject matter jurisdiction may be raised sua sponte by an appellate court. *Scherbak v. Kissler*, 245 Neb. 10, 510 N.W.2d 318 (1994). Subject matter jurisdiction is a question of law for the court. *Miller v. Walter*, 247 Neb. 813, 530 N.W.2d 603 (1995). On questions of law, an appellate court has an obligation to reach a conclusion independent from the trial court's conclusion. *George Rose & Sons v. Nebraska Dept. of Revenue*, 248 Neb. 92, 532 N.W.2d 18 (1995).

Neb. Rev. Stat. § 30-2611 (Reissue 1995) provides in significant part:

> (a) Notice of the time and place of hearing of a petition for the appointment of a guardian of a minor is to be given

by the petitioner in the manner prescribed by section 30–2220 to:

(1) the minor, if he is fourteen or more years of age;

(2) the person who has had the principal care and custody of the minor during the sixty days preceding the date of the petition; and

(3) any living parent of the minor.

(b) Upon hearing, if the court finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of section 30–2608 have been met, and the welfare and best interests of the minor will be served by the requested appointment, it shall make the appointment.

The trial court found that notice was not given to the children's fathers as required by this statute. We do not reach that question because we conclude that we must dismiss the cases for lack of jurisdiction.

The trial court's finding that the evidence was insufficient to warrant the appointment of a guardian appears to result from the trial judge's belief that no guardian should be appointed while juvenile proceedings are pending. Section 43–285(1) provides in part:

When the court awards a juvenile to the care of the Department of Social Services, an association, or an individual in accordance with the Nebraska Juvenile Code, the juvenile shall, unless otherwise ordered, become a ward and be subject to the guardianship of the department, association, or individual to whose care he or she is committed.

It therefore appears that if a juvenile court has awarded the care of a juvenile to DSS, an association, or an individual, the minor has a guardian by virtue of the above statute unless the juvenile court otherwise orders.

In such a situation, the need for a guardian to be appointed by a probate court is not apparent. Furthermore, § 43–285(1) also provides: "Any such association and the department shall have authority, by and with the assent of the court, to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed

to it." Section 43–285(3) provides that DSS, the association, or the individual who is awarded the care of the juvenile shall file a report every 6 months or as ordered by the court, and that statute provides for judicial supervision of the care of juveniles under the jurisdiction of the juvenile court.

In order for a guardian to be appointed under § 30–2611, the court must find that the welfare and best interests of the minor are served by the appointment. If the juvenile court already has appointed a guardian, it is difficult to articulate a reason why the welfare and best interests of the minors would be served by the appointment of another guardian. If one considers the powers and duties that are placed upon a guardian of a minor by Neb. Rev. Stat. § 30–2613 (Reissue 1995), the powers and duties of the guardian appointed by the probate court would clearly conflict with the powers and duties of DSS, an association, or an individual as guardian under juvenile court proceedings. This conflict could well be the basis for a finding that the appointment of a guardian by the probate court does not serve the best interests of a minor whose care has been awarded to someone else.

Even if the person or entity appointed guardian of a minor is the person or entity to whom the juvenile court has awarded custody, the situation is just as bad or worse because such persons or entities could be subject to supervision by two separate courts concerning their responsibilities. We realize that in most counties the county judge is also the juvenile judge, but this is not true in all counties. In addition, it appears quite possible that the children could be living in a different county when the guardianship proceeding would be attempted than the county the juveniles lived in at the time the juvenile proceeding was commenced. It is therefore possible that different county courts could have jurisdiction over the same juvenile. For this reason, we believe that the proper analysis of the situation includes a consideration of the jurisdiction of the juvenile court.

Section 43–247 provides in significant part:

The juvenile court shall have exclusive original jurisdiction as to any juvenile . . . defined in subdivision (3) of this section, and as to the parties and proceedings provided in subdivisions (5), (6), and (8) of this section. .

. . [T]he juvenile court's jurisdiction over any individual adjudged to be within the provisions of this section shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction.

Section 43-247(5) provides that the juvenile court has jurisdiction over the parent, guardian, or custodian who has custody of any juvenile described in § 43-247. If a probate court should appoint a guardian of such a minor, that guardian would then be subject to the jurisdiction of the juvenile court. We believe that a court such as the juvenile court should appoint the guardians it is expected to supervise.

■ When § 43-247 is read in light of § 43-285, it can only mean that when a minor has been adjudicated a juvenile as defined under § 43-247(3) and the juvenile court retains jurisdiction, a probate court cannot appoint a guardian of that juvenile without the consent of the juvenile court.

Such evidence as the record contains establishes that some juvenile court has jurisdiction over all four children because of neglect; that necessarily means an adjudication under subdivision (3) of § 43-247. The evidence also establishes that the juvenile court has awarded to DSS the care of these children. If a juvenile court has jurisdiction of a juvenile under § 43-247 and has awarded the care of the juvenile to DSS, DSS is the guardian of that juvenile under § 43-285.

DSS relies upon Neb. Rev. Stat. § 43-284.02 (Reissue 1993), which provides that DSS may make payments as needed on behalf of the ward to a guardian after one is appointed. The statute does nothing more than allow payments to a guardian; it makes no provision for the appointment of a guardian, nor does it purport to limit the jurisdiction of the juvenile court.

The briefs and arguments of DSS and the mother lead us to conclude that DSS felt the appointment of a guardian was a proper method of ending the jurisdiction of the juvenile court. In its brief, DSS put forth arguments in support of the notion that termination of a juvenile proceeding by the appointment of a friend or relative who has custody of the minor as guardian is a desirable outcome for many children who have been subject to juvenile proceedings due to the neglect of their parents. DSS

might well be correct; however, DSS does not explain why such an outcome is not possible in the juvenile court, or at least with its cooperation. It appears as though such questions can be addressed in the juvenile court. In any event, it seems clear that DSS should not be allowed to use the probate court as a means of ignoring the juvenile court, and we are confident that the Legislature did not intend for the probate court to interfere with the juvenile court's work.

We therefore dismiss these cases for lack of jurisdiction, but we note that the order of the county court purporting to adjudicate some of the merits of these cases is ineffective, and therefore the county court's dismissal with prejudice is ineffective.

APPEAL DISMISSED.